UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NICHOLAS B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:20-cv-00009-RLY-MPB |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 12). Plaintiff Nicholas B.[1] seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits (DIB). The matter is fully briefed. (Docket No. 14; Docket No. 15; Docket No. 16). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Nicholas B. is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**I.    PROCEDURAL BACKGROUND**

On June 14, 2017, Nicholas filed an application for DIB under Title II of the Social Security Act, alleging disability beginning June 7, 2017. (Docket No. 12-5 at ECF p. 2). His

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

application was denied initially and upon reconsideration. (Docket No. 12-3 at ECF pp. 2-12, 14-25). On November 14, 2018, Administrative Law Judge, Michael Scurry, conducted a video hearing at which Nicholas, his counsel, and an impartial vocational expert appeared and testified. (Docket No. 12-2 at ECF pp. 30-60). On February 21, 2019, the ALJ issued a decision finding that Nicholas was not disabled. (Docket No. 12-2 at ECF pp. 16-25). On December 16, 2019, the Appeals Council denied Nicholas's request for review, thereby rendering the ALJ's decision the agency's final decision for purposes of judicial review. (Docket No. 12-2 at ECF pp. 2-4). On January 17, 2020, Nicholas timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying his benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

Nicholas raises two separate reversible errors. First, he argues that the ALJ erred at Step three by failing to determine that his impairments met or medically equaled Impairment Listing 12.15. Second Nicholas argues that the ALJ erred at the RFC, and consequently Steps 4 and 5, by failing to consider off-task behavior when deciding whether he can return to past relevant work.

## II.    STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his

previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. §

404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III.  STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

### IV. FACTUAL BACKGROUND

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Nicholas was not disabled. (Docket No. 12-2 at ECF

4

p. 25). At step one, the ALJ found that Nicholas met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity[2] since June 7, 2017, the alleged onset date. (Docket No. 12-2 at ECF p. 18). At step two, the ALJ found that Nicholas had the following "severe impairments: post-traumatic stress disorder, bipolar disorder, degenerative arthritis of the spine, osteoarthritis, flat foot and plantar fasciitis, and obesity." (Docket No. 12-2 at ECF p. 18). At step three, the ALJ found that Nicholas did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 12-2 at ECF p. 19-21). The ALJ specifically considered Listings 1.04, 12.04, 12.06, and 12.15. (*Id.*). As to the "paragraph B" criteria, the ALJ found that Nicholas had moderate limitations in two areas—interacting with others and concentrating, persisting, or maintaining pace—mild limitations in understanding, remembering, or applying information, and no limitations in adapting or managing oneself. (Docket No. 12-2 at ECF pp. 19-20). After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except occasional climb ladders, ropes, or scaffolds, and frequently stoop. The claimant can understand, remember and apply information for semi-skilled, less than complex tasks, and concentrate, persist and maintain pace for such tasks, and occasionally interact with others.

(Docket No. 12-2 at ECF p. 21). At step four, the ALJ found that Nicholas was able to perform past relevant work as it was generally performed. (Docket No. 12-2 at ECF p. 25). Thus, having found that Nicholas was not disabled at step four, the ALJ did not continue his analysis through step five.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

5

## V. DISCUSSION

As described at the outset, Nicholas makes two assertions of error. The Court addresses each in turn.

### 1. ALJ's Step 3 "Paragraph B" Criteria Analysis

Nicholas's opening brief argues that the longitudinal record does not support the ALJ's "Paragraph B" analysis and that, at least, the ALJ should have found that he had marked limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. The Commissioner responds that Nicholas's argument is not supported by the record evidence and some of the very evidence that Nicholas argues was overlooked (or underappreciated) was actually relied upon by the ALJ. Thus, the Commissioner argues that Nicholas is really asking this Court to reweigh the evidence. On reply Nicholas concedes that the record only supports, at best, mild restriction with regards to understanding, remembering or applying information—but still maintains that the other areas should have been rated at least marked, if not extreme.

Step three asks an ALJ to consider whether an impairment, alone or in combination with other impairments, meets or medically equals a listed impairment, and is governed by Social Security Ruling ("SSR") 17-2p, (S.S.A. Mar. 27, 2017, 2017 WL 3928306, at *1). To meet a particular Listing, a claimant must show that his impairment "satisfies all the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3); *see also* 20 C.F.R. § 404.1525(c)(4) (the duration requirement is typically a continuous period of 12 months). To medically equal a listed impairment, a claimant must demonstrate that his impairment is at least equal in severity and duration to every criteria of the listed impairment. 20 C.F.R. § 404.1526. Under either approach, the claimant must

6

demonstrate that all criteria are satisfied; satisfying only some of the criteria is insufficient. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

When explaining his assessment at step three, an ALJ should discuss the relevant listing by name and "offer more than a perfunctory analysis of the listing." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). Mental impairment listings, such as Listings 12.04, 12.06, and 12.15 require that in addition to meeting certain diagnosis-specific requirements contained in their own Paragraph A, the claimant must additionally satisfy general requirements contained in either Paragraph B or Paragraph C of each Listing. 20 C.F.R. pt. 404, subpt. P, App. 1, 12.00 *et seq.* Aside from exchanging the name of the particular mental disorder addressed by each Listing, Paragraph B and Paragraph C of Listings 12.04, 12.06, and 12.15 are identical.

The ALJ's step three finding that Nicholas did not meet or medically equal the requirements of Listing 12.04, 12.06, or 12.15 was based on his determination that Nicholas did not meet the "Paragraph B" or "Paragraph C" criteria of that Listing. Nicholas only challenges the ALJ's "Paragraph B" criteria analysis. The ALJ did not discuss whether Nicholas presented sufficient evidence to meet the Paragraph A criteria, apparently assuming that he had.[3] The Paragraph B criteria require the presence of at least two of the following for a claimant to be considered disabled: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Larson v. Astrue*, 615 F.3d 744, 748 (7th Cir. 2010). Thus, satisfaction of the Paragraph B criteria requires that Nicholas's mental impairments cause at least two "marked" limitations, or one "marked" limitation and

---

[3] The criteria in Paragraph A medically substantiate the presence of the mental disorder.

7

"repeated" episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(4) (rating the degree of limitation in this functional area on a five-point scale: none, mild, moderate, marked, and extreme).

As the Commissioner notes much of the evidence Nicholas cites in his opening brief is addressed by the ALJ, if not in the step three analysis, then elsewhere in the ALJ's decision. The Court does review the decision of an ALJ in whole. *See, e.g.*, *Rice v. Barnett*, 384 F.3d 363, 370, n. 5 (7th Cir. 2004) ("[B]ecause it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (Internal citation omitted)). However, the ALJ's analysis—regardless of where it appears in the ALJ's decision—still cannot be contrary to the record. *See, e.g.*, *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) ("The ALJ's analysis strikes us as impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary."). That is the problem here.

With respect to concentration, persistence, or pace, the ALJ assigned moderate limitations and did note that the Nicholas's function report indicated that he had issues with concentration. The ALJ went on to properly note that some mental examinations noted no deficits in the claimant's attention, memory, or intelligence. (Docket No. 12-2 at ECF p. 20, citing Docket No. 12-10 at ECF p. 134; Docket No. 12-8 at ECF p. 22). However, the ALJ ignored evidence in the treatment records that was relevant to Nicholas's ability to concentrate, persist, and maintain pace that contradicted his "Paragraph B" criteria discussion. While the ALJ noted that in 2016 Nicholas reported that his wife stated he had no emotion anymore, that Nicholas had been thinking about the war a lot lately and the buddies he lost over there, (Docket

8

No. 12-2 at ECF p. 23) which were all reports from the same treatment note with Nurse Daily, the ALJ ignored evidence in the same treatment record that said Nicholas "reports that he was laid off today . . . [h]e states that he has been having a lot of difficulty concentrating while at work. He reports that things that should be small tasks for him are overwhelming." (Docket No. 12-7 at ECF p. 107). On January 13, 2017, Nicholas reported that it was a good thing that he was not currently working because he was unable to concentrate, focus, and he had "extreme anxiety." (Docket No. 12-7 at ECF p. 102). On May 3, 2017, Nicholas reported that the "frequency and intensity of panic attacks seems to be increasing despite active treatment" and that on that day "he experience[d] a severe panic attack which prevented him from working." (Docket No. 12-7 at ECF p. 60). On June 2, 2017, immediately prior to Nicholas's alleged disability date, Nicholas reported that he had a panic attack on that date and called in sick to work. (Docket No. 12-7 at ECF p. 56).[4] While it may be true that a claimant could not be deemed disabled based only on pre-onset date medical records, especially where it appears he was still engaged in substantial gainful activity, it does not follow that the medical evidence predating his alleged disability onset is "irrelevant" to evaluating disability at a later point in time. *Doherty v. Astrue*, No. 1:11-cv-00838-DML-TWP, 2012 WL 4470264 (S.D. Ind. Sept. 27, 2017) (providing an in depth analysis as to the ALJ's responsibility to consider "all" evidence in the administrative record, including pre-onset evidence when it is provided by the claimant).

---

[4] A later record indicated that Nicholas's employer confirmed he was fired on June 7, 2017, for not showing up to work, which Nicholas had reported was due to his anxiety. (Docket No. 12-5 at ECF p. 12). *See* 20 C.F.R. § 404.1504 (providing for claims on or after March 27, 2017, the Commission will not provide *any* analysis about any other governmental agency's determination of entitlement to benefits, but that the Commission will consider *all* supporting evidence the other governmental agency relied on that the Commission also received as evidence).

9

In July 2017, Nicholas reported to Dr. Lykins, a psychologist, that beginning in December 2016, he began experiencing significantly more frequent flashbacks and periods of panic, which left him unable to focus at work. (Docket No. 12-8 at ECF p. 18). Furthermore, Nicholas had to cut several post-onset date therapy sessions short due to his anxiety, including on September 27, 2017, (Docket No. 12-10 at ECF p. 130); December 20, 2017, (Docket No. 12-10 at ECF p. 122); and February 28, 2018 (Docket No. 12-10 at ECF p. 115). The ALJ's decision fails to account for this evidence in the record, both in his "Paragraph B" criteria and in his later discussion of all the evidence.

With respect to adapting or managing oneself, the ALJ assigned no limitations indicating that he had no difficulties with his personal care needs, had appropriate hygiene, and was on time and pleasant for his appointments. (Docket No. 12-2 at ECF p. 20). But, later on in the RFC discussion the ALJ cited that Nicholas stated that he needs reminders to take his medication and to care for himself (Docket No. 12-2 at ECF p. 22, citing Docket No. 12-6 at ECF pp. 22-29). This contradiction is unexplained in the ALJ's decision. The ALJ also overlooked some evidence with respect to interacting with others, although to a lesser degree. The ALJ assigned moderate limitations noting that "Nicholas often presented as anxious and paranoid at his counseling sessions, asking to barricade the door." (Docket No. 12-2 at ECF p. 20 (citing Docket No. 12-10 at ECF p. 88)). However, the ALJ countered, Nicholas had a good relationship with his children, was working out with a friend, and was spending more time with his wife. (*Id.* (citing Docket No. 12-10 at ECF p. 112)). The ALJ also stated that mental examinations consistently noted that Nicholas was friendly and cooperative. (*Id.*). However, the ALJ ignored other evidence that contradicted these statements. In July 2017, Dr. Lykins opined that Nicholas's occupational and social impairment are fully or nearly fully attributable to his PTSD. (Docket No. 12-8 at ECF p.

16) ("[Patient's] primary symptoms, and those that appear most distressing and impairing, are those that are directly related to his PTSD diagnosis (e.g., trauma-related nightmares, avoidance of a variety of potentially triggering stimuli, marked arousal and reactivity)"). On February 21, 2018, Nicholas reported that his anxiety continues, but he now knows when he needs to avoid places or risk a panic attack. (Docket No. 12-10 at ECF p. 116).

It is not the role of the Court to re-weigh the medical evidence, resolve conflicts, or draw conclusions on the Commissioner's behalf. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while an ALJ "does not need to discuss every piece of evidence in the record, that ALJ may not analyze only the evidence supporting [his] conclusion while ignoring the evidence that undermines it. The ALJ must confront the evidence that does not supper [his] conclusions and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118,1123 (7th Cir. 2014) (internal citations omitted). Accordingly, this matter should be remanded so that the ALJ may acknowledge the full record with regards to the "Paragraph B" criteria.

   **2. Absences or time off task**

Next, Nicholas contends that the ALJ erred at Step four by failing to consider his absences or time off task in the RFC. The Commissioner responds that the ALJ is only required to include restrictions proven on the record and need not include restrictions lacking evidentiary support. Nicholas responds that there is a litany of medical records that show Nicholas's flashbacks, panic attacks, and fatigue, which would reasonably result in off-task behavior. Moreover, Nicholas argues he did testify about losing his previous job for missing fifteen days in a six-month period due to flashbacks, panic attacks, and fatigue. (Docket No. 12-2 at ECF p. 51).

State agency medical consultants Dr. Kari Kennedy and Dr. Kenneth Neville found initially and on reconsideration that Nicholas was moderately limited in his "ability to maintain

11

attention and concentration for extended periods" and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," but was not significantly limited in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (Docket No. 12-3 at ECF pp. 8-9, 21-22). The ALJ found these opinions "persuasive" as they were "consistent with the longitudinal medical evidence, including the relatively benign mental evaluations and the claimant's subjective statements that he is working out at two gyms regularly." (Docket No. 12-2 at ECF p. 24).

However, as discussed before the longitudinal record included evidence of absenteeism, including that Nicholas was fired from his previous job immediately before his alleged onset date, due to absenteeism, which he consistently reported to his medical professionals was because of his panic attacks. The Commissioner argues that the ALJ was not required to include restrictions that lacked support from the record. This argument seems to be that this Court can infer from the ALJ's decision that the ALJ decided the evidence related to absenteeism or time off task was not credible. *See, e.g.*, *Misener v. Astrue*, 926 F. Supp. 2d 1016, 1036 (N.D. Ind. 2013) ("Misener is correct that the ALJ never made any determination of Misener's probable rate of off-task time or absenteeism. The government's response seems to be that we can infer from the ALJ's silence on the subject that he decided any portion of the evidence related to absenteeism or off-task time was not credible. The Court will not decide whether that is a justifiable inference to draw or not, however, because there is a more obvious error in the record. That said, the ALJ is encouraged to use the remand as an opportunity to clarify how he accounted for off-task time and absenteeism in his RFC, as well."). This Court should not make

12

sure inference. Rather, given remand is required on the first issue, the ALJ should address the evidence of absenteeism and time off task directly and include a proper analysis of the impact, if any, it has on Nicholas's RFC.

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **REMANDS** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 23rd day of August, 2021.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.